UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL WHITE,                                    Case No.: 20-11543
                          Plaintiff,
v.                                                Stephanie Dawkins Davis
                                                  United States District Judge

OFFICER WOODSIDE, *et al.*,
                          Defendants.             Curtis Ivy, Jr.
_____/                  United States Magistrate Judge

**ORDER DENYING MOTION TO STRIKE EXPERT (ECF No. 46) AND
MOTION TO STRIKE AFFIDAVIT (ECF No. 57)**

## I.   BACKGROUND

Plaintiff Crystal White began this excessive force claim on June 12, 2020,

against the City of Southfield and three Southfield police officers ("Defendants").

(ECF No. 1).  The claims arise out of an incident that occurred the evening of

January 9, 2020 when defendant police officers were dispatched to a family

altercation involving White.  At one point, an officer struck White in the face and

deployed a taser to her body.  A few weeks later, her 12-week gestation pregnancy

ended in miscarriage.  White asserts the death of the fetus was caused by the taser

shock.  She employed a potential expert, Dr. Lawrence Borow, an

obstetrician/gynecologist, to testify to the cause of the miscarriage.  He concluded

the taser was the cause of death.  Defendants bring this motion to strike Dr.

Borow's expert report for its alleged deficiency under Federal Rule of Civil

Procedure 26(a)(2)(B)(i) and (ii).  (ECF No. 46).  Defendants also move to strike Dr. Borow's affidavit (provided for the first time) attached to White's response to a motion for summary judgment as an untimely and inappropriate attempt to cure the deficient expert report.  (ECF No. 57).  Both motions were referred to the undersigned for hearing and determination.  (ECF Nos. 49, 58).  The Court heard argument on the motion to strike the expert report and accepted argument on the motion to strike the affidavit on March 4, 2022 although it was not yet fully briefed.

## II.    DISCUSSION

### A.    Dr. Borow's Expert Report

Dr. Borow's March 18, 2021, expert disclosure contains his curriculum vitae, fee schedule, a list of other cases in which he has testified, and his written expert report.  (ECF No. 46-3, PageID.936).  At the beginning of the expert report, Dr. Borow listed Plaintiff's January and February 2020 medical records he reviewed, including records from before the incident, immediately following the incident, and weeks later after Plaintiff had the miscarriage.  (*Id.* at PageID.955-56).

The narrative portion of the report describes Plaintiff's relevant medical history.  Plaintiff had a history of four prior miscarriages and four full-term pregnancies.  Four days before the taser incident, Plaintiff presented to the hospital

2

for abdominal pain.  She presented again the day of the incident after it occurred on January 9, 2020, but did not have any bleeding, spotting, or abdominal cramps at the visit, but admitted to some spotting the day before.  She was five weeks pregnant at that time.  On February 24, 2020, at twelve weeks pregnant, she returned to the hospital with complaints of vaginal bleeding and that she felt she lost the fetus.  Testing confirmed miscarriage.  Two days later she returned to the hospital for a follow-up visit.  The medical record noted she had been punched in the face and tased twice with immediate vaginal bleeding after being tased.  (*Id.* at PageID.956-58).

Dr. Borow then offered his opinions.  After reviewing the records, he concluded, "to a reasonable degree of medical certainty, that the use of the Taser gun in the first trimester of pregnancy must be considered to be a high-risk police activity. . . .  [L]iterature suggests that the Taser can [] produce significant harm to the fetus, . . . resulting in fetal death and a delayed subsequent miscarriage.  It is suggested that the Taser electrical current passes to the uterus and that amniotic fluid acts as an excellent conductor of electrical current."  (*Id.* at PageID.958). Based on his review of the medical records, he found no suggestion of a significant abnormality in the pregnancy prior to the miscarriage.  He also stated the fetus continued to grow for several weeks following the taser exposure, "but obviously harm had been done to the fetus sufficiently to result in a failed and disrupted

pregnancy." (*Id.* at PageID.958). He opined that, without the taser incident, Plaintiff would have more likely than not continued with an otherwise normal pregnancy like she had four times in the past. (*Id.* at PageID.958-59).

    B.   <u>Analysis</u>

    Defendants argue Dr. Borow's report should be stricken because (1) it does not identify the data or literature that supports his opinion and (2) he did not explain how or why he came to his conclusions. Specifically, he did not explain why he believes the electrical current from the taser impacted the fetus or, for example, how Plaintiff's spotting the day before the taser incident did or did not impact his opinion that it was the taser that caused the miscarriage. (ECF No. 46, PageID.916-20). For these reasons, Defendants assert that Dr. Borrow has not demonstrated his opinions are the product of reliable methods such that they should be admissible. Plaintiff argues the report is sufficient as it is.

    Federal Rule of Evidence 702 requires the trial judge to perform a "gatekeeping role" when considering the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 597 (1993). The United States Supreme Court has established that Rule 702 requires district courts to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (expanding *Daubert's* analysis of expert scientific testimony

to cover expert testimony based on "technical" and "other specialized knowledge"). The gatekeeping role progresses in three steps. First, the witness must be qualified according to his or her "knowledge, skill, experience, training, or education." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702). Second, the expert's testimony must be relevant, in that it will help "the trier of fact to understand the evidence or to determine a fact in issue." *Id*. Third, the testimony must be reliable. To determine whether expert testimony is "reliable," the court's role, and the offering party's responsibility, "is to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. The proponent of the testimony bears the burden to prove by a preponderance of the evidence that the testimony is reliable. *Wellman v. Norfolk & W. Ry. Co.*, 98 F. Supp. 2d 919, 923 (S.D. Ohio 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)). Courts need not admit opinions or conclusions that are "connected to existing data only by the *ipse dixit* of the expert." *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

   "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also*

*Wellman*, 98 F. Supp at 924 (The Court's gatekeeper role "is not intended to supplant the adversary system or the role of the jury.") (citing *Daubert*, 509 U.S. at 596).

### 1.     Identification of Literature

Federal Rule of Civil Procedure 26(a)(2)(B) states, in pertinent part, that an expert's written report must contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." These requirements are "mandatory," and compliance with them has to be "absolute." *Roberts ex rel. Johnson v Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

Although Dr. Borow cited "literature" in his report, he did not list sources or provide any information related to the literature he purportedly reviewed. Plaintiff argues Rule 26 does not require an expert to disclose any literature they relied on. (ECF No. 52, PageID.1660). This assertion is unavailing because the rule expressly requires the expert to disclose "the facts or data considered by the witness" in forming their opinion. Fed. R. Civ. P. 26(a)(2)(b)(ii). Because Dr. Borow relied on literature in reaching his conclusion that suggests contact with a

taser could harm the fetus, he was required to disclose that literature.  Because he did not do so, his expert report is deficient.[1]

As mentioned, attached to Plaintiff's response to Defendants' motion for summary judgment is an affidavit executed by Dr. Borow on January 5, 2022, in excess of a month after Defendants' motion to strike the expert report and nearly a year after he provided his expert report.  There, he lists various sources he relied on to support his findings and opinions.  For example, he listed a 1992 article, "Electrical Injury from Tasering and Miscarriage."  Dr. Borow provided the abstract from that article, but not the full article.  The list of sources also includes news articles about tasering and pregnancy, a "Guidelines and Recommendations" article for the use of tasers by the Stanford Criminal Justice Center, and an article on the medical implications of taser use from the "Defence Scientific Advisory Council Sub-Committee on the Medical Implications of Less-Lethal Weapons." (ECF No. 54-3, PageID.1730-31, 1748).

Defendants argue the affidavit should be stricken as untimely pursuant to Fed. R. Civ. P. 37(c)(1).

---

[1] Federal Rule of Civil Procedure 26(e)(2) extends the duty to supplement an expert report "to information included in the report and to information given during the expert's deposition."  This supplementation must occur 30 days before trial.  Fed. R. Civ. P. (a)(3). Plaintiff does not argue the affidavit is a Rule 26(e)(2) supplement, and so the Court does not consider it as such.

"Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified.'" *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citation omitted).  It provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

The Sixth Circuit considers these five factors in assessing whether the omission is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

As stated, the failure to include the list of sources in the initial expert disclosure violates Rule 26.  The expert report and affidavit will not be stricken, however, if the failure was substantially justified or harmless.

Defendants argue they were surprised by the affidavit—Plaintiff did not file it until briefing on the motion to strike the report was complete.  Plaintiff did not list literature or provide copies of the articles separately to Defendants.  Defendants

8

suggest this method of providing the affidavit is gamesmanship, a way to sneak in the required information.  (ECF No. 57, PageID.1886).  Plaintiff insists there was no surprise because the affidavit "merely supplemented" the expert report.  She states she attached the affidavit to her summary judgment response to provide information that expanded on Dr. Borow's theory of the miscarriage with greater specificity.  (ECF No. 61, PageID.1983).

The first two *Howe* factors require consideration of the degree to which the party against whom the new evidence is offered would be surprised by that evidence and whether that surprise can be cured.  Defendants assert they were surprised to see the list of literature that was not previously disclosed.  Indeed, it was  late in the litigation to be apprised of the information that was required to have been included in the initial expert disclosure.  But because the affidavit does not contain any new opinions or theories about the miscarriage, the degree of the surprise is minimal.  Moreover, Defendants can cure the surprise.  First, there is no surprise to cure with regard to the affidavit as an attachment to the summary judgment response.  As Defendants note, the affidavit was referenced only once and "is irrelevant to the legal arguments in the underlying motion."[2]  (ECF No. 57, PageID.1884).  Second, as a trial date has not been set, there is time to take Dr.

---

[2] To the extent that Defendants believe supplemental briefing is required on their motion for summary judgment to address the affidavit, they may direct a motion for leave to do so to the District Judge.

Borow's deposition or for Defendant to obtain (or add to) rebuttal expert testimony given the disclosed literature, with leave of the Court. *See Adkisson v. Jacobs Eng'g Grp., Inc.*, 2018 WL 3460244, at *7 (E.D. Tenn. July 18, 2018) (Finding opposing party could cure surprise when "trial remains almost three months away, offering Defendant the opportunity to examine Dr. Terry's new report further, either through deposition or further rebuttal proof by its experts.").

As a trial date has not been set, allowing the affidavit and Dr. Borow's expert report to stand will not disrupt trial.

The fourth factor does not strongly weigh in either direction. The affidavit appears important to support Dr. Borow's opinion, but it does not appear independently important to the issues raised in this case. Defendants argue the evidence is important to evaluating Dr. Borow's opinions, but that the disclosure cannot cure the deficiencies in his report because he did not explain "how the fact that fetus continued to grow for at least four weeks after the tasing occurred at five weeks gestation supports the conclusion that the taser caused the miscarriage when his 'literature' suggests injury would 'lead[] to fetal death the week after the Taser exposure.'" (ECF No. 57, PageID.1886-87). But as explained more fully below, this argument goes to the weight to be afforded to the opinion, an issue that can be addressed on cross-examination or with rebuttal expert testimony.

10

As to the final factor, Plaintiff did not explain why she did not provide the affidavit sooner.  She insists Dr. Borow's report as at first disclosed was sufficient and thus Dr. Borow was not required to submit the affidavit.  The affidavit was provided only to support the summary judgment response.  (ECF No. 61, PageID.1984-85).  Plaintiff's reliance on an erroneous interpretation of Rule 26 is not a satisfactory reason for the failure to disclose the list of literature much sooner, at the latest when Defendants moved to strike the report.

Considering the surprise was not great and Defendants have opportunity to cure any surprise, the Court will not strike Dr. Borow's expert report or the literature on which he relied or the later-filed affidavit containing the list of sources and copies of sources for failure to identify the literature in the initial disclosure.

Defendants' remaining arguments for striking the expert report are that Dr. Borow did not explain the basis of his opinions, or put another way, that he did not explain how or why he came to his conclusions.  Expert reports "must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (citation omitted).  "[A]n expert opinion must 'set forth facts' and, in doing so, outline a line of reasoning arising from a logical foundation." *Id.* (quoting *Brainard v. Am. Skandia Life Assur. Corp.,* 432 F.3d 655, 657 (6th Cir. 2005)).  Without this reasoning, Defendants contend the report is not reliable.

11

In his report, Dr. Borow explained that he reviewed Plaintiff's medical records.  The records included examinations, obstetrical ultrasound results, and pathological fetal tissue examination results.  (ECF No. 46-3, PageID.956-57).  Dr. Borow also relied on literature about tasers and fetal development, which has now been provided.  He is an obstetrician/gynecologist and Defendants do not contest his qualification to testify.  He made his conclusions based on the evidence in the medical records, what is stated in the literature, and, at least implicitly, his experience as an obstetrician.  The report just passes the mark as sufficient to explain how and why he reached his conclusions.  If the facts, data, or literature on which he relied are "shaky," this can be challenged with rebuttal expert testimony and cross-examination.  *Wellman*, 98 F. Supp. 2d at 924 (The Court's gatekeeper role "is not intended to supplant the adversary system or the role of the jury.") (citing *Daubert*, 509 U.S. at 596).  Defendants' arguments that, for example, Dr. Borow did not adequately address the fact that Plaintiff has some bleeding the day before the taser incident, go to the weight of the opinion, not its admissibility.  For these reasons, the motion to strike Dr. Borow's report is **DENIED**.

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not

assign as error any defect in this Order to which timely objection was not made.

Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order

to which the party objects and state the basis of the objection.  When an objection

is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling

remains in full force and effect unless and until it is stayed by the magistrate judge

or a district judge.  E.D. Mich. Local Rule 72.2.


Date: April 14, 2022                              s/Curtis Ivy, Jr.
                                                  Curtis Ivy, Jr.
                                                  United States Magistrate Judge